FILED

JUN 1 5 2016

CARMELITA REEDER SHINN
CLERK, U.S. DISTRICT COURT
BY _____
DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

FRED SMITH,
    Plaintiff

v.

Case No.  CIV-16-654-C

OKLAHOMA DEPARTMENT
OF CORRECTIONS,
    Defendant

## PRO SE  PRISONER CIVIL RIGHTS COMPLAINT

**I.**    **Jurisdiction is asserted pursuant to:**

        42 U.S.C. 1983 and 28 U.S.C. 1343 (a) (3)
        42 U.S.C. 2000cc (RLUIPA)
        42 U.S.C. 2201 (Declaratory Judgment)
        42 U.S.C. 2202 (Injunctive Relief)

**II.**    **State whether you are a:**

    Plaintiff is a convicted and sentenced state prisoner.

**III.**    **Previous Federal Civil Actions or Appeals:**

    List each civil action or appeal you have brought in a federal court while you
    were incarcerated or detained in any facility.
        See Attached Page.

**IV.**    **Parties to Current lawsuit:**

    1.    Plaintiff:  Fred Smith
                James Crabtree Correctional Center
                216 N. Murray Street
                Helena, OK  73741

                Inmate number 218694

**III.   Previous Federal Civil Actions or Appeals:**

List each civil action or appeal you have brought in a Federal Court while you were incarcerated or detained in any facility.

    1)    Prior Civil Action / Appeal no. 1

        a) Parties to previous lawsuit:

            Plaintiff:  Fred Smith  #218694

            Defendants:  Justin Jones, Brian Wideman, Robert Ezell, Debbie Morton.

        b) Court and Docket Number:  U.S. District Court for the Western District of Oklahoma,  CIV-12-1365-HE.  2014 WL 5448890.

        c) Approximate Date of Filing:  2012

        d) Issues Raised:  Denial of religious rights, infliction of extreme emotional distress, endangered health and safety, denial of state law right to fair grievance process.

        e) Disposition:  Defendants granted Summary Judgment on 10-13-14. Appeal to 10th Circuit, Relief denied on 03/26/15, Smith v. Jones, 606 Fed.Appx. 899 (10th Cir)

2. Defendant No. l:  Oklahoma Department of Corrections
                     3400 Martin Luther King Ave.
                     P.O. Box ll400
                     Oklahoma City, OK  73136

This Defendant is being sued in its official capacity.  Official capacity Defendants are not entitled to the defense of qualified immunity.  Brandon v. Holt, 469 U.S. 464, 472, 105 S.Ct. 873 (1985).

## V.  Cause of Action.

### 1.  Claim 1:

(1)  List the right that you believe was violated:

PLAINTIFF ALLEGES THAT THE RELIGIOUS DIET PROGRAM OF THE DEPARTMENT OF CORRECTIONS, SET FORTH IN ATTACHMENT**S** OF DOC POLICY OP-030112, VIOLATES HIS RIGHT TO EXERCISE HIS RELIGIOUS BELIEFS UNDER THE RLUIPA AS A JEWISH INMATE.

(2)  List the Defendant(s) to this claim.

Plaintiff is suing the Oklahoma Department of Corrections.

(3)  List the supporting facts:

The Religious Diet Program of the DOC, set forth in Attachment C of DOC religious policy number OP-030112, requires the Plaintiff to agree to a specific set of consequences for violating Kosher, which has a "Zero Tolerance Policy" and increasingly severe suspensions from a Kosher diet for violations of Kosher, and a "waiting period" to get on a Kosher diet with restrictions.  A copy of this part of the policy is attached as an exhibit.

Plaintiff alleges that this portion of OP-030ll2 violates his right to practice his  Jewish religion regarding a Kosher diet under the Religious Land Use and Institutionalized Persons Act (RLUIPA) set forth as 42 U.S.C. 2000 cc et seq.  This statute says "This Act shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this Act and the Constitution".  42 U.S.C. 2000 cc-3(g).

Plaintiff alleges that there has been, and still is, an ongoing violation of this right due to an actual controversy as to whether the challenged portion of the DOC religious policy violates Plaintiff's and other similarly situated inmates' rights under the RLUIPA.

Plaintiff asserts that portions of the Oklahoma Department of Corrections religious policy, OP-030112 and especially Attachment C of this policy, violate RLUIPA. Specifically, Section VI (A)(4) entitled "Religious Diets"states that "Offenders must reapply for their religious diet upon transfer to another facility". Section VI (A)(6) states that "Offenders that are suspended from a Kosher or Halal diet must submit a new "Kosher/Halal Diet Request Form" (Attachment C) following their suspension to be reinstated".

Attachment C is entitled "Kosher/Halal Diet Request Form". It states that:

"By signing below the offender agrees that: (1) They will not consume or possess any food that is not consistent with the diet requested, regardless of the source of the food, unless they request and receive a diet change". (2) They understand that it may take up to 60 days before they can receive their diet. In addition, should they make a subsequent request to change diets, they must wait 60 days to request a different diet. (3) They will not barter prepackaged Kosher or Halal meals. (4) They acknowledge and understand that not following the above guidelines may result in the following consequences:

> 1st violation: 30 days suspension of religious diet.
> 2nd violation: 120 days suspension of the religious diet.
> 3rd and subsequent violations: One year suspension of the religious diet. "

Inmates are required to sign this form before being put on a religious diet. There is no due process or any type of opportunity to explain circumstances or explain their position before removal. There is a Zero Tolerance Policy. Violations stay on an inmates record permanently, with no expiration. In other words, a second violation several years after a first violation still counts as a second violation. This policy states that there is to be an "Incident Report" prepared for an alleged violation, but there often is not. In many instances, the name of the reporting Officer or staff member is not provided to the inmate being removed due to an accusation of violating the terms of the above.

The above policy of the Oklahoma Department of Corrections is almost identical to that enacted by the Florida Department of Corrections, entitled "Religious Diet Program" (RDP).

In May of 2011, the U.S. Department of Justice opened a formal investigation of the Florida Department of Corrections' religious dietary policies. On 08/14/12 the U.S. Department of Justice filed suit as U.S. v. Secretary, Florida Dept. of Corrections, 2013 WL 6697786 to force the Florida Dept. of Corrections to provide Kosher meals to prisoners with religious dietary requirements. After the Florida Dept. of Corrections' Motion to Dismiss was denied, it implemented a "Religious Diet Program" (RDP) with restrictive provisions. As set forth above, it was almost identical to Oklahoma DOC's RDP. The Dept. of Justice moved for an injunction requiring the Florida DOC to provide a Kosher diet to all prisoners with a sincere religious basis for keeping Kosher, and to prohibit prison officials from implementing its new Religious Diet Program to the extent that it violates RLUIPA. The U.S. District Court granted the motion, and entered an Order that detailed the procedures for the Florida DOC to follow when providing prisoners with Kosher meals. See 778 F.3d 1223 (11th Cir. 2015), also Rich v. Secretary, Florida Department of Corrections, 716 F.3d 525 (11th Cir. 2013).

The RDP referred to above contains a "Zero Tolerance Policy" under which an inmate is removed from the RDP if he possesses or consumes any item that the prison's food vendors do not list as Kosher. Removal under both the Florida DOC's and Oklahoma DOC's RDP lasts for 30 days for a first offense; 120 days for a second offense; and one year for all subsequent offenses. Prisoners do not have an opportunity to explain their position regarding the allegation of possession or consumption of a non Kosher items prior to removal. There is no time expiration for violations. There is a waiting period of several days before being put on a Kosher diet. The court found that the Florida DOC's dietary policies, including the RDP, violates the RLUIPA by burdening the religious exercise of prisoners seeking a Kosher diet. The court found that the Defendant Florida DOC could not meet their burden under the strict scrutiny inquiry of RLUIPA, 42 U.S.C. 2000cc-2(b), citing Beerheide v. Suthers, 286 F.3d 1179, 1185 (10th Cir. 2002).

Since the court found that the Florida DOC's RDP subsequently burdened the religious exercise, the burden shifted to the Defendant to show that the provisions of the policy were the least restrictive means of furthering a compelling government interest under 42 U.S.C. 2000cc-2(b). The court found that none of the challenged provisions of the RDP met this standard. The court found that the Defendant cannot argue that they have a compelling interest in denying a Kosher diet, while they provide a Kosher diet to all eligible prisoners, citing Moussazadeh v. Texas Dept. of Criminal Justice, 703 F.3d 781, 794 (5th Cir. 2012), Roger v. Bryan, 523 F.3d 789 (7th Cir. 2008); Spratt v. Rhode Island Dept. of Corrections, 482 F.3d 33, 40 (1st Cir. 2007). Defendants cannot have it both ways. Defendants cannot have it both ways. Defendants cannot argue that they have a compelling interest is not providing Kosher meals, and also argue that they are committed to providing Kosher meals.

The court in U.S. v. Secretary, Florida Dept. of Corrections went on to hold that "While cost concerns may be a compelling interest in certain situations (see Rich, 778 F.3d at 534) the RLUIPA expressly contemplates that facilitating religious exercise may require a government to incur expenses in its own actions. 42 U.S.C. 2000cc-3(c). The costs in this situation are not of a compelling magnitude. They represent a relatively minor expense. The court cited the 10th Circuit as finding that avoiding a larger expenditure on Kosher meals constituting .0016 of the budget was not rationally related to a penological interest. Beerheide, 286 F.3d at 1191. Also see Moussazadeh, 703 F.3d at 785 ("We are skeptical that saving less than .005 percent of the food budget constitutes a compelling interest"). The court in U.S. v. Secretary, Florida DOC concluded that the "Defendants cannot show that avoiding the expense of providing a Kosher diet to Florida prisoners is the least restrictive means of furthering a compelling interest". This court also held that the RDP's requirement that prisoners seeking a Kosher diet consume exclusively non-Kosher food during a waiting period cannot withstand strict scrutiny, because that provision deprived prisoners of a Kosher diet during the waiting period of several day. For example, see Nelson v. Miller, 570 F.3d 868, 880 (7th Cir. 2000) (failure to provide a non-meat diet during 40 days of Lent a substantial burden); Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2000) (denying Muslim prisoner's special Ramadan meals 24 out of 30 days constitutes a substantial burden under RLUIPA), and is not the least restrictive means of furthering any compelling interest.

Prison officials may not determine which religious observances are permissible because they are orthodox. Grayson v. Schuler, 666 F.3d 450, 453-55 (7th Cir. 2012) In Jackson v. Mann, 196 F.3d 316, 320 (2nd Cir. 1999) it was held that it is the sincerity of a prisoner's belief, not the decision of Jewish authorities, which determines whether a prisoner was entitled to Kosher meals. In Moussazadeh, 703 F.3d at 792, the court held that Defendant's orthodoxy testing strays too far into the realm of religious inquiry, where government officials "are forbidden to tread".

In U.S. v. Secretary, Florida DOC, the court specifically held that the RDP's Zero Tolerance Policy's removal provisions fails RLUIPA's strict scrutiny requirements. As set forth, this RDP is identical to the Oklahoma DOC's RDP. The court held that under RLUIPA, a "few lapses in perfect adherence do not negate a prisoner's overarching display of sincerity", citing Moussazadeh, 703 F.3d at 792 (holding that a Jewish prisoner who repeatedly purchased non Kosher items from the commissary nonetheless established his sincerity as a matter of law by requesting Kosher diet and pursuing litigation). "A sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance, for where would religion be without its backsliders, penitents and progidal sons?" Grayson, 666 F.3d at 454.

The court in U.S. v. Secretary, Florida DOC also stated that "Injunctive relief is necessary to prevent irreparable harm to hundreds of Florida prisoners who believe that keeping Kosher is an important part of their religious beliefs. As set forth above, several aspects of Defendant's RDP will continue to burden prisoners religious exercise, in violation of RLUIPA. These unlawful restrictions on religious exercise constitute irreparable injury" See Opulent Life Church v. City of Holly Springs, Miss., 697 F.3d 279, 295 (5th Cir. 2012) (finding irreparable harm when RLUIPA is violated), Beerheide, 296 F.3d at 1192 (failure to provide Kosher diet burdens free exercise of religion, in violation of the 1st Amendment. Indeed, it is well established that "The loss of 1st Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976)"

Judical intervention is necessary to ensure that the Defendant does not change their RDP in violation of RLUIPA in the future. Enjoining the challenged provisions of the RDP will not harm Defendants in any way.

An injunction that vindicates religious freedoms protected by federal law is in the public interest. U.S. v. Alabama, 691 F.3d 1269, 1301 (11th Cir. 2012). ("Frustration of federal statutes and prerogatives are not in the public interest"). Protection of religious exercise is a cherished ideal, and RLUIPA passed both houses of Congress unanimously as "the latest of long-running congressional efforts to accord religious exercise heightened protection from government imposed burdens". Cutter, 544 U.S. at 713. By its terms, RLUIPA is broadly construed in favor of religious liberty "to the maximum extent permitted by the statute and the Constitution". 42 U.S.C. 2000cc(3)(g) to ensure that "sincere faith and worship can be an indispensable part of rehabilitaton".

4) Relief requested:

Plaintiff requests that all of Attachment C of OP-030ll2 be eliminated, except for a request to be put on a Kosher or Halal diet, and a statement of the inmate's sincere religious belief. Inmates put on a Kosher or Halal diet should never be removed from it, unless they request to be removed. There are many ways of sanctioning inmates, other than forcing them to continue to violate their religious beliefs.

Plaintiff requests a Declaratory Judgment stating that removal from a Kosher diet without the inmate's request to be removed violates the RLUIPA.

Plaintiff also requests an Injunction prohibiting the Defendant Department of Corrections from removing Jewish inmates from a Kosher diet without his request.

Plaintiff is not seeking monetary damages.

## V.  Cause of action:

## 2.  Claim II:

l)  List the right that you believe was violated:

CERTAIN PROVISIONS OF DOC RELIGIOUS POLICY OP-030112 AND ITS ATTACHMENTS DENY OR SUBSTANTIALLY BURDEN PLAINTIFF'S EXERCISE OF HIS JEWISH RELIGION BY DENYING HIM POSSESSION OR USE OF ESSENTIAL ITEMS, IN VIOLATION OF THE RLUIPA.

2)  List the Defendant(s) to this claim.

Plaintiff is suing the Oklahoma Department of Corrections (DOC).

3)  List supporting facts:

Inmates are not allowed to possess or have access to religious items, unless they are specifically listed in religious policy OP-030l12 and its attachments.  If an item is not specifically listed, it is not allowed, and considered to be contraband.  Plaintiff alleges that many items a Re essential to his proper observance of Judaism.  This places a substantial burden on Plaintiff's exercise of his sincerely held religious beliefs.

Judaism has a set of religious commandments, rituals, and customs clearly identified and described in the Torah, Siddur and Code of Jewish Law (CJL).  The items listed below and herein are not now allowed by policy OP-030l12 and its attachments; but are required for the proper observance of Shabbat (Sabbath) services, Havdalah, Pesach (Passover), Shavuot, Sukkot, Rosh Hashanah, Yom Kippur, Chanukah, Shemini Atzeret, Simchat Torah, and a number of other religious events.

The Code of Jewish Law (CJL) Chapter 40 describes in detail the use of a two handled water pitcher for the washing of the hands.  There is a very specific ritualistic procedure for handling the pitcher, requiring a double handled vessel.  See CJL chapters 2, 40, 44, 45, 48, 77, 96, ll9.

A tallit katan ~~is required~~ is required in Code of Jewish Law (CJL) chapters 2, l24, l28, l3l, l33, l47.

Challah bread is required in CJL chapters 35, 4l, 42, 48, 72, 77, l02, l3l.

Matzah (unleavened bread) is required in CJL chapters 35, 4l, 42, 48, 72, 77, l02, l08, l09, ll0, ll3, ll8.

Herbs and spices are required in CJL chapters 58, 77, 96, 98, ll7.  These are especially necessary for Havdalah.

The drinking of wine (in prison, non-alcoholic wine or grape juice) is required in CJL chapters: 39, 42, 47, 49, 72, 77, 96, 103, 118, 119, 135, 142, 205. Consumption of this is described throughout the Torah, Sidder and Code of Jewish Law. It is central to Judaism.

A Kiddush cup and saucer are required for Kiddush. Draydels (a small toy, spinning top) is required for Chanukah.

4) Relief requested:

The Plaintiff requests that this court issue a Declaratory Judgment declaring that the deprivation of the above religious items denies or places a substantial burden on his exercise of his sincerely held religious beliefs under the RLUIPA. It is not necessary to show irreparable harm or inadequate remedies at law to seek a Declaratory Judgment. **PGBA, LLC v. U.S., 389 F. 3d 1219, 1228 (Fed. Cir. 2004)**. However, there must be an "actual controversy" between the Plaintiff and Defendant for a Declaratory Judgment to be issued. Plaintiff asserts that the "actual controversy" is whether the challenged provisions of **OP-030112** and its attachments violates the **RLUIPA. 28 U.S.C. 2201. FRCP Rule 57**.

Plaintiff also requests that this court issue an Injunction requiring the Defendant, Department of Corrections, to allow these items to Jewish inmates, without any undo restriction: **28 U.S.C. 2202. FRCP RULE 65**.

The specific relief requested includes the following and other claims herein.

(A) Add "herbs and spices" to attachment A of **OP-030112** for Judaism.

(B) Add the following to Attachment B: Plastic Seder plate, plastic Matzah plate, plastic Challah plate with cloth cover, plastic Kiddush cup and saucer, Draydel, Havdalah set, Havdalah spices and bag, Tallit Katan / kettel, heavy plastic double handled water pitcher.

(C) Eliminate all of Attachment C, except a simple request to be put on a Kosher or Halal diet, and a statement of the inmate's sincere religious beliefs. No sanctions for a violation of policy **OP-030112** involving being taken off a religious diet.

(D) Add the following to Attachment F for Judaism: Matzah bread, Challah bread, non-alcoholic wine or grape juice, with no requirement to have outside sponsor or volunteer to have anything to do with the possession and consumption of non-alcoholic wine or grape juice.

(E) Add at least two more authorized vendors for the purchase of Jewish religious items. An example is Messianic Resources Intl., 6120 Day Long Lane, Clarksville, MD. 21029 or 1-800-Judaism, 2028 Murray Ave., Pittsburgh, PA. 15217.

(F) Change **OP-030112 VI(A)(1)** to eliminate the complained of language herein, regarding receipt of a Kosher diet.

(G) Change **OP-030112 VI(A)(4)** such that Jewish inmates do not have to reapply to receive a Kosher diet upon being transferred

(H)  Change OP-030112 VI(A)(6) such that inmates suspended from a Kosher diet are automatically reinstated at the end of any suspension period, without having to reapply and wait.

(I)  Change OP-030112 VI(A) to allow inmates with a sincere religious belief to receive a Kosher meal on recognized important religious holidays or festivals, whether or not they are normally on a Kosher diet.  Some Jewish inmates, especially Reform Jews, only feel compelled to keep Kosher on the High Holy Days, and they should be allowed to do so upon advance request.

(J)  Change OP-030112 (B)(3) regarding work restrictions, such that inmates do not have to "make up" missed time and assignments.  There is no such requirement for inmates who miss work due to observance of Christmas, Thanksgiving, 4th of July, Memorial Day, etc.  This is discriminatory and violates the RLUIPA.

(K)  Change OP-030112 Attachment B, page 3, to allow one cubic foot for individual possession of religious literature and items, in addition to allowable space for legal material, hobbycraft, etc.

(L)  Add to OP-030112 Attachment B, permission to possess a Katan (kittle), white outergarment to be worn at religious festivals.

(M)  OP-030112 Attachment B does allow possession of religious undergarments, but it does not state that they "may be worn at all times", as it does specify for religious headgear.  Wearing religious undergarments is required by the Code of Jewish Law, Chapter 2.  Adding this phrase is important to avoid confrontation with Correctional Officers.

In addition to Attachment C, Plaintiff is challenging the following provisions of DOC religious policy OP-030112.

OP-030112 VI (A)(1) states that "Offenders that desire to receive a pork-free or meat-free meal must submit a "Request to Staff" form to the facility food service supervisor. Offenders from any faith group may request a pork-free or meat-free diet. An offender who wishes to receive a Kosher or Halal diet must submit a "Kosher/Halal Diet Request Form" (Attachment C, attached) to the facility Chaplain or the food services supervisor in community corrections facilities".

It is thus clear that inmates seeking a pork-free or meat-free religious diet are treated much differently than those seeking a Kosher or Halal diet. Inmates seeking a pork-free or meat-free diet are not subject to the restrictive terms and conditions of Attachment C, and they are not closely monitored and scrutinized in an attempt to "catch them" violating their diet. Inmates on a pork-free or meat-free diet who are found to have violated this, are not treated nearly the same was as inmates on a Kosher or Halal diet. This is unequal treatment, apparent discrimination, and violates RLUIPA.

OP-030112 (A)(4) states that "Offenders must reapply for their religious diet upon transfer to another facility". This would thus require a 60 day waiting period before receiving a Kosher diet, after the inmate has had time to reapply. There is no valid reason for this. Inmates' records follow them from facility to facility, and most are electronic. Inmates do not change their religion upon being transferred. This violates RLUIPA.

OP-030112 VI (A)(6) states that "Offenders that are suspended from a Kosher or Halal diet must submit a new "Kosher/Halal Diet Request Form" (Attachment C) following their suspension to be reinstated". There is no valid reason for this. This is just another hurdle and time delay, designed to keep inmates off of a Kosher or Halal diet as long as possible, with the pretextual excuse of saving money. This violates RLUIPA. There is no reason why an inmate who is taken off of his religious diet cannot automatically be reinstated after the suspension time is over with, without having to reapply. Virtually all aspects of prison administration are computerized. This could easily be accomplished.

Plaintiff represents that the complained of provisions of the DOC religious policy, OP-030112 affect all prisons in Oklahoma, including the private prisons under contract with the Oklahoma DOC. This is a statewide issue, not specific to any one facility. Plaintiff has in fact been incarcerated at various facilities over the years, and represents that the attitude and conduct of prison officials is much the same at all facilities, in the context the issues raised herein.

## LEGAL STANDING AND SUBJECT MATTER JURISDICTION

Plaintiff asserts that he has legal standing to raise this official capacity claim for prospective Declaratory Judgment and Injunctive Relief, and that this court does have subject matter jurisdiction.

Plaintiff is aware of this court's unpublished recent decision in McCrary v. Jones, 2015 WL 873641 (USDC WD OK), case number CIV-13-573-M. Plaintiff asserts that the instant case is distinguishable f rom that in McCrary for the following reasons.

1) Plaintiff McCrary is a Muslim inmate in Oklahoma who filed suit due to being removed from a Halal religious diet due to the same complained of provisions of OP-030112, Attachment C. But Mr. McCrary had been off of a Halal diet for two years, and had not requested to be put back on it. That is not the situation in the instant case.

2) Mr. McCrary did not allege an ongoing violation, or that he was under immediate threat of injury. This Plaintiff has made these allegations.

3) Mr. McCrary did not respond to the Defendants' Motion to Dismiss, even after being warned that his failure to respond could result in dismissal. That is not the situation in this case.

In McCrady, this court found that Plaintiff McCrady had not shown that a favorable ruling would redress any actual injury, thus he lacked standing to pursue prospective relief. That logic is inapplicable to the instant case. A prison policy which is illegal cannot be allowed to stand, and inmates have a right to seek prospective injunctive relief. This Plaintiff will be subject to the illegal provisions of the challenged policy (OP-030112 and its attachments) until the policy is modified to comply with the RLUIPA. As set forth above, this Plaintiff has been harmed by this policy before, and very likely will be again until it is modified.

This Plaintiff's civil rights complaint was made under penalty of perjury, thus it is "evidence". Plaintiff has attached evidence of his desire to be on a Kosher diet, namely his complaint and his attached grievance documents.

This Plaintiff has a well documented history of having sincere religious beliefs in Judaism, and he has filed suit in this U.S. District Court previously seeking relief for the denial of his right to practice his Jewish religion. See Section III above.

In <u>Calvin v. Caruso,</u> 852 F.Supp.2d 862 (WD Mich. 2012), 605 F.3d 282 (6th Cir. 2010) the federal court ruled that prison official Defendants were entitled to qualified immunity in individual capacity for monetary damages, but that the RLUIPA was violated by removing inmates from a Kosher diet for possession of non-Kosher food. The court held that removing a prisoner from a Kosher diet for mere possession of non-Kosher food may be overly restrictive of inmates' religious rights.

Plaintiff asserts that the mere possession of non-Kosher food, or the "bartering" or giving of Kosher food to someone else does not violate the Torah. An example would be a Jewish man who owns a grocery store that sells both Kosher and non-Kosher food. This man is not violating his religious beliefs, as long as he does not actually consume non-Kosher food. While in the prison context, there is a valid rule against "bartering" or giving personal items to another, violations of this rule are set forth in the DOC disciplinary policy, OP-060125. Sanctions for "bartering" in the disciplinary policy do not list removal from a Kosher diet as being an allowable sanction. Thus, inmates who are alleged to have violated the terms of Attachment C of OP-030112 regarding "bartering" are punished twice; once by a sanction imposed per OP-060125, and again by being removed from a Kosher diet. This violates RLUIPA.

Plaintiff alleges that the complained of tactics by the religious police of the DOC come very close to constituting a "hate crime" under state law 21 O.S. 850 and similar federal law. This statute makes illegal the malicious intimidation or harassment of people, because of their race, color, religion, ancestry, national origin or disability.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Prisoners must exhaust all <u>available</u> administrative remedies before filing suit, per the Prison Litigation Reform Act (PLRA). <u>Jones v. Bock,</u> 549 U.S. 199, 127 S.Ct. 910 (2007). Plaintiff asserts that there is no available administrative remedy for his claim(s) per DOC grievance policy OP-090124.

Neither the staff member replying to his Request to Staff (the facility Chaplain), nor the Reviewing Authority for his grievance (the facility Warden), nor the DOC Administrative Review Authority have the authority to grant the relief requested. Inmates may not challenge the legality of a DOC policy.

Out of an abundance of caution however, Plaintiff did properly pursue the DOC grievance policy before filing this action. See attached grievance documents.

## STANDARD OF REVIEW

Plaintiff asserts that the appropriate Standard of Review for this case is that of the Religious Land Use and Institutionalized Persons Act, RLUIPA, which was passed by Congress in 2000. This established the "compelling interest/least restrictive means" standard. This means that a government may not substantially burden a person's exercise of religion, unless it demonstrates that doing so (l) is in furtherance of a compelling governmental interest, and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. 2000 bb-1.

Under the Spending Clause of the U.S. Constitution, if a state or local government accepts federal funds for their correctional programs, they must satisfy the "compelling interest/least restrictive means" standard to justify substantial burdens on prisoner's religious exercise. Under RLUIPA, prison officials have the burden of proof. 42 U.S.C. 2000cc-l. Virtually all agencies that run prisons or jails accept some federal funds, so RLUIPA applies to virtually all prisons and jails. Cutter v. Wilkinson, 544 U.S. 709, 725, 125 S.Ct. 2113 (2005). Plaintiff represents that the Oklahoma Department of Corrections accepts federal funds.

Plaintiff asserts that when prison officials force an inmate to choose between starvation or violating his sincerely held beliefs regarding keeping Kosher, they have imposed a substantial burden. The complained of Oklahoma DOC policy, OP-030112 and Attachment C regarding a Kosher diet is not necessary to serve a compelling interest. There is a less restrictive alternative. There is no compelling interest at stake. Even if this court found that the complained of provisions of the Religious Diet Policy were partially valid, there are many other ways of sanctioning an inmate who has violated Kosher, other than forcing him to continue to violate Kosher for several days. Inmates can be issued a disciplinary write-up and be sanctioned with a loss of telephone privileges, visitation privileges, or commissary privileges, or even be put in disciplinary segregation. They can be required to do "extra duty", or have a monetary fine imposed. Removing a Jewish inmate from a Kosher diet serves, religiously speaking, to distance him from his own spirituality and religious practice. It is not a neutral act. This has a direct negative impact on the inmate's ability to better himself, or maintain himself spiritually, as actual harm is done to both the physical being and the spirituality of the inmate. See Leviticus ll, Deuteronomy 14, Exodus 16, 20 and the Code of Jewish Law, chapters 35 to 57. The practice of keeping Kosher is essential to the Jewish way of life. There is no alternative means of achieving what the laws of Kosher are designed to achieve.

In a similar case, a federal court ordered that a Jewish inmate be restored Kosher diet immediately, that the prison be enjoined from suspending the inmate's Kosher diet altogether based on isolated dietary infractions, and instead find alternative means of punishment that do not lack a valid connection to the policy of supporting the inmate's religious practice pursuant to his sincerely held religious beliefs. See Kupperman v. New Hampshire Department of Corrections, 2007 U.S. Dist. LEXIS 32859.

In Sample v. Lappin, 424 F.Supp.2d 187 (D.D.C. 2006), reconsideration denied, 479 F.Supp.2d 120 (D.D.C. 2007) the federal court held that a Jewish inmate should not be completely prohibited from having a small amount of wine at Jewish services, because that was

not the least restrictive means. The court held that Jewish inmates could receive small amounts of wine as part of religious rituals, under certain controlled circumstances.

Under the RLUIPA standard, prison officials must show that they have actually considered and rejected the efficacy of less restrictive measures. Spratt v. Rhode Island Dept. of Corrections, 482 F.3d 33, 40-41 (1st Cir. 2007). Under RLUIPA, prison officials must show that there is no way to accomplish some necessary purpose that is more respectful of prisoners' religious beliefs than the practice that is being challenged. Sample v. Lappin, supra.

There is no question that keeping Kosher is a religious exercise for purposes of the RLUIPA. U.S. v. Myers, 906 F.Supp. 1494, 1502-04 (D. Wyo. 1995), affirmed 95 F.3d 1475 (10th Cir. 1996). If an inability to eat proper foods for a religious holiday prevents an inmate from engaging in conduct motivated by a sincerely held religious belief, or forces one to engage in conduct prohibited by a sincerely held religious belief, it may constitute a substantial burden. Abdulhaseeb a/k/a Jerry Thomas v. Calbone, 600 F.3d 1301, 1313 (10th Cir. 2010).

In Love v. McCown, 38 Fed. Appx. 2002 U.S. App. LEXIS 13585, the court granted injunctive relief to an Arkansas Jewish inmate, requiring prison officials to provide the Plaintiff with a Kosher diet.

## OKLAHOMA LITIGATION HISTORY

In Oklahoma, three Jewish inmates won both preliminary and permanent injunctive relief in this U.S. District Court for the Western District of Oklahoma, requiring the Oklahoma Department of Corrections to provide them with a Kosher diet at no personal cost. They are: Dennis Fulbright, CIV-03-99-W; Jon Cottriel, CIV-03-125-W; and Jerry Harmon, CIV-03-1465-W. This court consolidated these cases and considered them together. As a result of this litigation, the Oklahoma DOC enacted its Religious Diet Policy, numbered OP-030112, with several attachments regarding different aspects of this policy.

In follow-up litigation, this court stated that in light of the Oklahoma Department of Corrections' vigorous resistance and opposition to providing Kosher diets, a permanent injunction was necessary, and this court granted it. Fulbright v. Jones, USDC WD OK 2006 WL 222807; 2006 U.S. Dist. LEXIS 5779. This court cited Beerheide v. Suthers, 286 F.3d 1179, 1188-89 (10th Cir. 2002), holding that a prisoner has a right to a diet consistent with his religious scruples, and holding Plaintiffs who were denied a Kosher diet lacked alternative ways of maintaining a Kosher diet. Also see LaFevers v. Saffle, 936 F.2d 1117, 1119 (10th Cir. 1991); Mosier v. Maynard, 937 F.2d 1521, 1523 (10th Cir. 1991).

Plaintiff asserts that while the Oklahoma DOC may generally have a compelling interest in cost savings, that is not applicable in this context. In fact, this court has analyzed and rejected the Oklahoma DOC's cost savings argument in the past. In Fulbright v. Evans, 2005 U.S. Dist. LEXIS 40240 (regarding the underlying consolidated cases CIV-03-99-W; CIV-03-125-W; and CIV-03-1465-W) this court found that the Defendant Oklahoma DOC had not provided any evidence as to the overall effect of the Kosher dietary option upon DOC's budget. However, the Plaintiffs submitted evidence showing that DOC's food budget for the current year (2005) was

Over 31 million dollars.  Courts have recognized that only a small number of inmates partake of a Kosher diet, and thus the expense associated with providing a Kosher diet represents only a de minimis portion of the correctional budget.  See Beerheide, 82 F. Supp. 2d 1190, 1199-1200 (10th Cir. 2000), finding that relatively few inmates had sought to keep Kosher following entry of preliminary injunction, that the Colorado DOC's estimated annual cost of providing Kosher food was only a very small percent of the agency's food service budget, and therefore providing Kosher meals had a de minimis effect on the agency's food service budget.

In Luckette v. Lovelace, 883 F.Supp. 471, 480 (D. Ariz. 1995) the federal court found that "only a few prisoners have legitimate religious beliefs which require they maintain a Kosher diet, and the expense of providing Kosher meals to those few prisoners is minimal".

In Fulbright, supra this court concluded that "under these circumstances, DOC has not shown that the minimal cost associated with providing Kosher diets to the small number of orthodox Jewish inmates who would potentially request a Kosher diet would create a significant financial burden on DOC's annualized budget".  Also in Fulbright, supra this court found that "DOC has established a clearly-defined adequate monitoring program for determining the religious sincerity of its inmates and for monitoring the meals of inmates who have requested religious-based diets.  DOC has not shown that accommodating Plaintiffs' religious dietary request would have substantial negative consequences, in terms of financial burdens or administrative problems".  This court went on to say in Fulbright, supra "Defendants assertion of a significant financial burden is an exaggerated response to the Plaintiffs' request for a Kosher diet," and that the Defendant had not satisfied its burden to provide "convincing evidence" that the cost and security issues advanced by the Defendant are other than de minimis, citing Beerheide, 286 F.3d at 1192.

Plaintiff asks this court to note that there is a pending case in this court in which an Oklahoma Jewish inmate has raised some similar claims, after he was removed from a Kosher diet.  Greer v. Dowling, Drawbridge, et al, CIV-14-708-M.

In Young v. Lane, 733 F.Supp. 1205, 1209 (ND Ill. 1990) the court held that an allegation that some Jewish Plaintiffs had been seen eating non-Kosher food, did not mean they were insincere, reversed on other grounds, 922 F.2d 370 (7th Cir. 1991).  The fact that a person does not adhere steadfastly to every tenet of his faith does not mark him as insincere.  Reed v. Faulkner, 842 F.2d 960, 963 (7th Cir. 1988).

The 5th Circuit held that a Texas Federal District Court's analysis of the sincerity of Jewish inmate Max Moussazadeh was flawed in multiple ways.  First, the court confused commissary food items that were not certified to be Kosher with being non-Kosher.  "Although certain adherents of Judaism may consume only certified Kosher food, others will consume what is not per se Kosher".  It is not for the courts to say how individuals may practice their religion.  Further, even if Moussazadeh had purchased non-Kosher food, that would not prove insincerity.  "A finding of sincerity does not require perfect adherence to beliefs expressed by the inmate, and even the most sincere practitioner may stray from time to time".  The 5th Circuit found the failure to provide a free Kosher diet was a substantial burden on Moussazadeh's religious practice.  Moussazadeh v. Texas Dept. of Criminal Justice, 703 F.3d 781 (5th Cir. 2012).

Plaintiff recognizes that the Prison Litigation Reform Act (PLRA) restricts prisoners' ability to get an injunction and keep it in effect. To get an injunction, it must be shown that the Plaintiff does not have an adequate remedy at law, which means that an award of damages or other relief will not adequately protect him. A Plaintiff must also show that there is an actual danger of future violation of rights. Although past violations, by themselves, may not entitle a Plaintiff to an injunction, past misconduct may be evidence that future misconduct is likely. Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 564 (9th Cir. 1990); Lopez v. Garriga, 917 F.2d 63, 67 (1st Cir. 1990) (requiring "likelihood of future unlawful conduct on the Defendants' part"). In drawing the inference from past violations that future violations may occur, the court should look at the totality of circumstances, and factors suggesting that the infraction might not have been an isolated occurrence are always relevant.

In Clement v. California Dept. of Corrections, 364 F.3d 1148, 1152-53 (9th Cir. 2004) a single Plaintiff obtained a statewide injunction against the banning of internet materials. In Ashker v. California Dept. of Corrections, 350 F.3d 917, 924 (9th Cir. 2003) a statewide injunction was issued based on a claim by one inmate. In Jordan v. Pugh, 2007 WL 2908931 (D. Colo. 10/04/07) a nationwide injunction found appropriate where a rule was found facially overbroad under the 1st Amendment. In Riley v. Brown, 2006 WL 1722622 (D. N.J. 06/21/06) the court entered an injunction to protect all prisoners from a sex offenders' facility from assault, notwithstanding lack of class certification, since the record shows that all of them were at risk because of their status, stating that the injunction "is not overly broad because it applies to a particular group of inmates who are likely to be targeted by other inmates, and it does not apply to any inmates that are unlikely to be targeted" Also, an injunction can extend beyond individual Plaintiffs, if such breadth is necessary to give prevailing parties the relief to which they are entitled. Courts have also held that prisoners who are not named parties may be third-party beneficiaries of orders or judgments, and may be able to enforce them.

In this case, Plaintiff has shown that he does not have an adequate remedy at law, because an award of damages will not adequately protect him. As set forth herein, and in other documents filed in this court which Plaintiff has identified below, there is a very realistic danger of future violations of rights by the Defendant. Plaintiff is setting forth below specific examples of past misconduct by the Defendant, which is evidence that future similar misconduct is likely. There is a continuing violation due to the illegal policy being challenged in this case.

In many instances, the religious police of the Department of Corrections have used the challenged religious diet policy's (RDP) restrictive terms and conditions as a weapon to harass, discriminate against, intimidate and retaliate against Jewish inmates due to their religion. Said another way, Jewish inmates are harassed because they have demonstrated the sincerity of their religious beliefs by complaining about violations of their religious beliefs by submitting grievances and filing lawsuits. Prison officials do not like inmates who complain, and often take retaliatory action against them. One form of insidious retaliation is taking an inmate off of his religious diet, knowing that this will case him extreme emotional distress by then being forced to violate his religion at every meal he consumes which is not Kosher.

No other group of inmates is watched as carefully as those on a religious diet. Their commissary purchases are constantly monitored to see if they have purchased any non Kosher

food. Inmates must scan their ID card to receive a meal, and the scanner announces those who are on a special diet. There are surveillance cameras throughout the chow hall. Officers personally watch inmates while eating and are told to report those on a special diet who violate this. Incoming food packages are monitored to see if they contain any non-Kosher item sent to an inmate on a Kosher diet. Inmates' living areas (cell or cubicle) are searched to see if they have any non-Kosher items in their possession. In some instances, an unsupported allegation by an unidentified person without an Incident Report being made is used to remove an inmate from a Kosher diet. Inmates are not allowed any opportunity to explain circumstances or contest being removed from a Kosher diet.

Listed below are specific incidents of the dirty tricks used by the religious police of the Department of Corrections regarding the above which have been reported and raised by Jewish inmates in this court, proving that this is an ongoing violation, and that there is a strong likelihood of future similar misconduct by the Defendant. Plaintiff is not now attempting to argue for other inmates. He is listing the below in support of his request for an injunction.

1) Oklahoma inmate Jerry Harmon is one of the three Jewish inmates who won this court's preliminary and permanent injunction regarding receipt of a Kosher diet, as set forth above. On 09/05/12 while at the James Crabtree Correctional Center in Helena, OK Mr. Harmon was removed from a Kosher diet because he had purchased strawberry jam at the commissary. He argued (to no avail) in his grievance and subsequent lawsuit in this court, that he had referred to an outdated commissary list which identified strawberry jam as being Kosher. Relief was denied. 2012 WL 6765597 (USDC WD OK).

This Plaintiff represents that the commissary list is changed every week, and that some items which are designated to be Kosher on one list, may not be so designated on another list.

2) Oklahoma inmate Fred Smith, #218694, is an orthodox Jewish inmate who has been removed from a Kosher diet three times, without there ever being a single allegation that he ever consumed non-Kosher food in his 22 years of incarceration, as set forth below:

(A) While at the Davis Correctional Facility in Holdenville, OK Mr. Smith was removed from a Kosher diet for the first time. The facility was on lockdown, so Mr. Smith was confined to his two man cell. He was delivered a pre-packaged Kosher meal by staff. Shortly thereafter, a Kosher brown bag "snack meal" was delivered to him by a medical staff member for medical reasons. His cell was then searched, and he was accused of possession of an "extra (Kosher) meal".

(B) Mr. Smith was in the medical department of Davis Correctional Facility one day until after the chow hall had closed. A staff member called the chow hall, and he was given a pre-packaged Kosher meal to take to his cell to eat. His cell was searched, and he was given a disciplinary write-up and removed from the Kosher diet for 120 days for "stealing (Kosher) food".

(C) Also at the Davis Correctional Facility, Mr. Smith was seen in the chow hall carrying a non-Kosher meal from the serving line to another inmate who is disabled. Mr. Smith was

Kosher food" and removed from a Kosher diet <u>for one year.</u>  Mr. Smith complained about the above in a lawsuit filed in this court, as case number CIV-12-1365-HE.  Relief was denied.  He was transferred to another facility.

3) Oklahoma Jewish inmate Chad Reed, #584428, was one of 19 inmates at the James Crabtree Correctional Center who were removed from a Kosher diet on Christmas Day, 2014.  The general population was served a special holiday meal at lunch that day, which was non-Kosher.  When Mr. Reed and other Jewish inmates requested a Kosher meal, staff members told them that there was none available that day, and to "take this tray".  They had to either eat this tray or not eat.  Those who took and ate the non-Kosher meal were immediately taken off of a Kosher diet.  This was obviously a planned tactic to create an excuse to remover several inmates from a Kosher diet.  Mr. Reed filed suit on this issue in this court, as case number CIV-14-88-C.  Relief was denied.

4)  Also at the James Crabtree Correctional Center, during 2014 Jewish inmate Travis Greer, #544419, attended a banquet in the prison visitation room to honor members of the Veterans Club.  This room has extensive camera surveillance and personal monitoring by Correctional Officers.  After the meal was over, prison officials reviewed the camera video and saw that inmate Greer had picked up his Kosher meal and taken it to a table, then returned to the serving line and picked up a non-Kosher meal and carried it to another inmate.  Mr. Greer was not seen eating a non-Kosher meal.  It was reported that he was seen drinking iced tea and eating some crackers which were given to him as part of his Kosher meal.  He was removed from receiving a Kosher diet for "possession of non-Kosher food" and consuming the iced tea and eating the crackers which were served to him as part of his Kosher meal.  He was not given any opportunity to explain the circumstances or to challenge the removal.  Mr. Greer raised this in a lawsuit in this court, as case number CIV-14-708-M, which is still pending.  During 2014, Mr. Greer was transferred.  He had a clear disciplinary record.  There was no valid reason for his transfer.

5)  Oklahoma orthodox Jewish inmate Logan Bishop, #442020, filed a lawsuit in this court on religious issues, including his removal from a Kosher diet, as case number CIV-11-550-HE.  He was transferred to the James Crabtree Correctional Center.  The prison conducted a special food sale offering, whereby inmates or their families could order food items sent to them.  Mr. Bishop's family entered an order for all Kosher food.  But the food vendor had a "bonus" for orders over a certain amount, and sent him some non-Kosher items as part of the bonus.  When Mr. Bishop picked up his food package, without his even being able to view it, he was cited for "possession of non-Kosher food" and removed from the list of those entitled to receive a Kosher diet.  Mr. Bishop submitted some grievances, and on 04/06/16 was transferred.  He had been incarcerated for over 12 years, without receiving any disciplinary write up.

6)  Oklahoma inmate Lionel Holland, #168445, was the leader of the Messianic Community at JCCC.  He had been incarcerated for over 25 years with no disciplinary write up.  But because he submitted several grievances and made it known he was going to file a lawsuit, he was transferred in February of 2016.

Plaintiff asks the court to note that although the Jewish community is very small, 3 Jewish inmates were transferred from JCCC in the last 12 months, none of them for cause.

7) Oklahoma Orthodox Jewish inmate Charles Huffstutler, #106484, was wrongfully removed from a Kosher diet. He filed suit in this U.S. District Court as case no. CIV-12-125-M. Relief was denied.

8) Oklahoma inmate Archie Rachel, #243908, was wrongfully removed from a Kosher diet at JCCC during March, 2016. It was claimed that "security" had seen him eat a non-Kosher meal in the chow hall. But when Mr. Rachel asked Chaplain Drawbridge who had made this accusation, and asked for a copy of the Incident Report on it, the Chaplain refused to identify who the accuser was, and said there was no Incident Report filed. Mr. Rachel's need for a Kosher diet is also due to his medical condition. He has a serious gastrointestinal problem which is well documented in his medical records. But that made no difference to prison officials. Mr. Rachel has filed a lawsuit in this court, as case no. CIV-15-141-R. Although this lawsuit is on medical issues, Mr. Rachel did recently file a "Notice of Retaliation" in his case regarding the wrongful removal from a Kosher diet.

9) Oklahoma Jewish inmates Fred Smith, Chad Reed, Stephen Burnett, #224242, and 5 others attended the facility Jewish Community's observance of Pesach (Passover) on Friday evening, 04/22/16 in the prison's visitation room. As the spiritual leader of the community, Fred Smith had requested Kosher for Passover food from the national Jewish organization, ALELPH, in Surfside, FL. They sent the requested food and grape juice. But Chaplain Drawbridge told Mr. Smith that he had poured out the grape juice because the group had no outside sponsor, and he warned Mr. Smith that he could not "share" any of the food with other inmates or it would be a violation of religious policy OP-030112, with its attachments. The visitation room has extensive DVD camera surveillance. Thus only Mr. Smith was able to eat matzot bread and the food on the Seder plate. The other 7 inmates knew they were being carefully watched by the camera and could not partake of even a tiny portion of this traditional Kosher for Passover food. None were allowed to drink even a tiny portion of grape juice. Plaintiff represents that the facility gives inmates apple juice regularly in the chow hall, and inmates can purchase orange juice and V-8 juice from the facility. Apparently, that provision of Attachment C to OP-030112 regarding the "bartering" of food is what was used to deny this important religious ritual observance. Plaintiff asserts that this was an intentional act of religious discrimination, in violation of RLUIPA.

In <u>Cutter v. Wilkinson,</u> 125 S.Ct. 2113 (2005) the U.S. Supreme Court held that the RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs, and are therefore dependent on the government's permission and accommodation for exercise of their religion."

The RLUIPA expansively defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief". 42 U.S.C. 2000 cc5 (7)(A). Prison chaplains are not the arbiters of the measure of religious devotion, or the discrete way prisoners may practice their religion. <u>Sossaman v. Texas,</u> 560 F.3d 316 (5th Cir. 2009). Prison officials may not act as religious police, as is continually being done throughout the Oklahoma prison system by the Oklahoma Department of Corrections.

In <u>Yellowbear v. Lampert,</u> 741 F.3d 48 (10th Cir. 2014) our 10th Circuit held that the prisoner Plaintiff had suggested alternatives which prison officials had failed to respond to, regarding his RLUIPA claim. The 10th Circuit presented an outline of factors and standards that courts <u>must consider</u> when reviewing a RLUIPA claim. Plaintiff requests that this court take note of the findings in <u>Yellowbear,</u> supra when reviewing this case.

The courts have long held that a lack of financing or monetary concerns are no defense for the denial of prisoners' legal rights. This goes to the Defendants likely claim in this case that the additional cost of Kosher meals is a defense for their complained of conduct. See <u>Battle v. Anderson,</u> 447 F.Supp. 516, 517, 526 (U.S.D.C. ED OK 1977); <u>Finney v. Arkansas Board of Corrections,</u> 505 F.2d 1914, 199 (8th Cir. 1974); <u>Ramos v. Lamm,</u> 639 F.2d 559, 573 (10th Cir. 1980); <u>Wilson v. Seiter,</u> 501 U.S. 294, 111 S.Ct. 2321, 2330 (1991).

The 10th Circuit follows the rule that "religious dietary practices are constitutionally protected....even if such dietary practices are not doctrinally "required" by the prisoner's religion. "Sincerely held" is different from "central", and courts have rightly shied away from attempting to gauge how central a sincerely held belief is to the believer's religion". <u>Kay v. Bemis,</u> 500 F.3d 1214, 1218 (10th Cir. 2007), quoting <u>O'Lone v. Estate of Shabazz,</u> 482 U.S. 342, 348 (1987).

The inquiry is not whether the complained of action substantially burdens the religious exercise of any practitioner whose religion follows a special diet, but whether the complained of action substantially burdens the Plaintiff's own exercise of his sincerely held religious beliefs. <u>Abdulhaseeb v. Calbone,</u> 600 F.3d 1301, 1314 (10th Cir. 2010).

In this case, Plaintiff asserts that the Defendant Department of Corrections has "allowed" a Kosher diet to inmates who have a documented history of being Jewish and who have requested a Kosher diet, but then the Defendant has created numerous ways of removing as many inmates as they can from a Kosher diet by creating DOC policy OP-030112 with its many attachments. In this action, Plaintiff has enumerated many of the ways in which this policy violates the spirit and intent of RLUIPA. It does little good to provide something, if it will then likely be taken away on any number of arbitrary and pretextual ways. Especially when there are other alternatives. The Department of Corrections has many ways of punishing inmates, other than those which serve to restrict or prohibit the inmate's practice of his religion, as set forth.

## VI.  Declarations:

I declare under penalty of perjury that the foregoing is true and correct.

_____          _____9__June__2016_____
Plaintiff's signature                                              Date


I further declare under penalty of perjury that I placed this complaint in the prison's legal mail system, with the correct postage attached, on the __9__ day of __June_____, 2016.

_____          ___8_June__2016_____
Plaintiff's signature                                              Date